## Fidelity & Deposit Company of Maryland v. Sally.

(Decided January 27, 1931.)

WILLIAM MARSHALL BULLITT, LEO T. WOLFORD and BRUCE & BULLITT for appellant.

S. M. WARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—
Affirming.

Appellee instituted suit against Burris H. Baker and appellant to recover for the alleged illegal arrest of appellee in the city of Hazard. Baker was a policeman of that city, and appellant was the surety on his official bond. The bond was to the effect that Baker would "well and faithfully perform all and singular the duties enjoined upon him by reason of his election or appointment aforesaid and faultlessly account for all moneys coming into his hands as such officer according to law."

It is alleged that on the 4th day of February, 1928, while Baker was so acting as a police officer and appellant was surety on his bond, Baker made the unlawful arrest. The unlawful arrest consisted of taking appellee into custody without a warrant when he had committed no offense in the presence of the officer and when the officer had no reasonable grounds to believe that he had committed a felony. It is alleged that the officer arrested and imprisoned appellee, and that when the arrest was made the officer assaulted and abused him.

Appellant filed its separate answer denying, in the first paragraph, the allegations of the petition, and, in a second paragraph, it is alleged that after the arrest appellee was tried in the police court on charges growing out of his acts and conduct in the presence of the police officer at the time of the arrest, and that a judgment was rendered against him placing him under a bond to the commonwealth to keep the peace and be of good behavior, and that he executed such a bond, and that because of the judgment of the Hazard police court

appellee was estopped to maintain any action for wrongful arrest or imprisonment.

Baker filed his separate answer, in which he traversed the allegations of the petition and, in a second paragraph, he alleged that appellee was committing an offense in his presence when he was arrested by him. Replies were filed to each of the answers, and, upon a trial before a jury, a verdict was returned against both of the defendants in favor of appellee for the sum of $500.

In its motion and grounds for a new trial appellant relied on four grounds: (1) That the verdict of the jury was excessive; (2) that incompetent evidence was admitted; (3) that the court erred in instructing the jury as to the nature and effect of the judgment of the Hazard police court requiring plaintiff to give a bond to keep the peace, and further because the court erred in withdrawing the evidence as to that bond from the jury; and (4) that the court erred in failing to properly instruct the jury and in overruling appellant's motion for a peremptory instruction.

The evidence was conflicting as to what happened at the time of the arrest. Appellee testified that he was standing on the street corner reading a newspaper, saying nothing and doing nothing, when Baker arrested him and at the same time cursed and abused him outrageously and shoved his pistol against him, and that over his protest and entreaties he was taken to jail, where he remained until the following Monday. This occurred on Saturday about 6 p. m.

Baker testified that he had been called by telephone and requested to come to the home of the father of appellee's wife, and that when he arrived there he did not find appellee, but later found him on the street when he approached the officer, being at the time drunk, boisterous, and disorderly, and that he could see the print of a pistol in his pocked. Whereupon he took him in charge, carried him to the jail where he left him until he could find the police judge and obtain a mittimus.

The first and chief ground urged for a reversal is that appellant could not be held responsible for the unlawful acts of the police officer, and for that reason the demurrer to the petition should have been sustained, or that there should have been a peremptory instruction directing the jury to return a verdict for appellant. The

opinions in the cases of Taylor v. Shields, 183 Ky. 669, 210 S. W. 168, 3 A. L. R. 1619; Fidelity & Casualty Co. v. White, 209 Ky. 402, 272 S. W. 902; Fidelity & Deposit Co. v. Hall, 215 Ky. 38, 284 S. W. 426; and Brittian v. U. S. Fidelity & Guaranty Co., 219 Ky. 465, 293 S. W. 956, are cited and relied upon to support the contention made by appellant. There is a line of cases holding that an officer who, not in the discharge of his official duties, makes an arrest, his surety cannot be held responsible for his unlawful act. These opinions speak for themselves, but they have no application to the case before us because of the provisions of section 3508 Ky. Stats. That is a part of the charter of cities of the fourth class and Hazard belongs to that class. That section requires the execution of a bond by a police officer to the effect that the officer will faithfully discharge all the duties of the office and pay over all sums of money that may come into his hands to the person entitled thereto. Then follows this provision:

"And for any unlawful arrest, or unnecessary or cruel treating or assault in making an arrest, they and their sureties shall be liable to the person so injured on said bond."

This provision of the statute becomes a part of every bond executed under that section, and the surety on the bond, by the provisions of the statute itself, is made liable for any unlawful arrest, or unnecessary or cruel treatment or assault in making an arrest.

The opinion in the case of Elam v. National Surety Company, 201 Ky. 74, 255 S. W. 1039, clearly points out the distinction between the cases cited and relied on by counsel for appellant and this case. It was there held in construing section 3508, Ky. Stats., that it unquestionably fixes and declares the liability of the surety in the bond of a police officer for the making of a false arrest by the latter. In the case of Rice v. Lavin, 199 Ky. 790, 251 S. W. 990, the distinction mentioned in the case of Elam v. National Surety Co. was also pointed out.

In the late case of Shelton v. National Surety Co., of New York, 235 Ky. 778, 32 S. W. (2d) 339, this court had before it a case where a similar provision of the statute may have been relied upon by the plaintiff as is relied on by appellee in the case before us; but there was no such reliance, and this court wrote an opinion holding

that the sureties of a police officer in a town of the sixth class were not responsible for the wrongful acts of the peace officer in the making of an arrest without a warrant, or in making an unlawful search of the premises without a warrant. A reading of the opinion discloses that the court did no more than to apply the principles announced in the cases relied on by appellant to the facts in the case then before the court, without taking into consideration the provisions of section 3690, Ky. Stats., which are similar to the provisions found in section 3508. The opinion in that case follows a long line of opinions and is not out of harmony with any of them. The court made no construction of the provisions of section 3690, Ky. Stats., and did not decide the case on the statutory provisions.

It is argued by counsel for appellant that the police officer had the right to make the arrest because it turned out that appellee had concealed upon, or about, his person a deadly weapon, and that the arresting officer could see the imprint of the pistol in the clothing of appellee. The case of Ratliff v. Stanley, 224 Ky. 819, 7 S. W. (2d) 230, 61 A. L. R. 566, is cited to support that contention; but the opinion does not support it. In the case of Louisville & N. R. R. Co. v. Mason, 199 Ky. 337, 251 S. W. 184, it was held that the arrest of a person cannot be justified on the ground that he was carrying concealed a deadly weapon when that fact was unknown when the officer made the arrest, and it was learned only by search of his person without warrant after he had been arrested without justification. It is true, in the case before us, that the officer stated that there was the print of a pistol which he could see in the clothing of appellee, but his testimony on that point was in connection with his statement that he drew his pistol when he saw appellee drop his hand towards his pocket. Appellee was charged with carrying concealed a deadly weapon, but the charge was dismissed. It is apparent from the testimony of the police officer that he made the arrest because, as he stated, appellee was boisterous and applying vile epithets to him and others.

When appellee was taken to the jail, he was left there until the police officer could find the police judge and obtain a mittimus. Two warrants were issued against him, but both were dismissed. However, there was a warrant requiring him to keep the peace and he was placed under a peace bond by the police judge.

There is nothing to show that the peace bond had any connection with the arrest, but the inference is clear that he was placed under a peace bond to prevent his harming his wife.

The instuctions are complained of, but we find them unobjectionable, although they may have been given in a more concise form. The first instruction correctly told the jury when an arrest may be made by an officer without a warrant. The second instruction directed the jury to find for appellee if the police officer made an unlawful arrest as defined in the first instruction, and the second instruction also further defined the right of the police officer to make the arrest in terms that are unobjectionable. The third instruction gave the measure of damages, while the fourth told the jury that it was an offense to be drunk or intoxicated, or to profanely curse or swear, or act in a disorderly way on the streets of the city. The fifth instruction related to the duty of the arresting officer to take appellee before some magistrate or judge when the performance of that duty was demanded of him by appellee, and that the officer should have so taken him unless he was so intoxicated or drunk at the time that it was necessary to place him in the custody of the jailer.

Taking the instructions as a whole, they fairly submitted the issues to the jury. On the whole case, we find no error prejudicial to the rights of appellant, and the judgment is therefore affirmed.

Judgment affirmed.

Whole court sitting.