## Fidelity & Deposit Co. of Maryland et al. v. Noger.

(Decided Oct. 21, 1932.)

WM. MARSHALL BULLITT, LEO T. WOLFORD, and BRUCE & BULLITT for appellants.

J. T. BOWLING and S. M. WARD for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, William Couch, was in January, 1930, appointed and duly qualified as a member of the police force of Hazard, Ky., a city of the fourth class, and the Fidelity & Deposit Company of Maryland became surety on his official bond executed as such.

This bond was to the effect that the said Officer Couch would "well and faithfully perform all and singular the duties enjoined upon him by reason of his election or appointment as such policeman and honestly account for all moneys coming into his hands as such officer, according to the law."

In January, 1931, this action was filed in the Perry circuit court by Martin Noger against the appellant William Couch and his surety, the Fidelity & Deposit Company of Maryland, to recover damages for the alleged unlawful arrest of appellee in the city of Hazard by appellant William Couch.

Appellee Noger's suit, against appellant Couch and the Fidelity & Deposit Company as surety upon his official bond, is based upon the fact, as alleged in his

petition, that he was arrested "wrongfully and without right and against the will and without the consent of this plaintiff and without any authority of law and at a time when the plaintiff had not been guilty of any violation of law in the presence of said Wm. Couch and at a time when the said Wm. Couch did not have reasonable grounds to believe that the plaintiff had committed a felony and at a time when the said Wm. Couch had no warrant authorizing him or any other officer to arrest this plaintiff," and that the said officer, when thus wrongfully arresting him, accompanied his wrongful conduct in so doing with cursing and abusing appellee and punching him with a pistol, and "transported and delivered him to the Police Judge of the City of Hazard, where and when he was released by order of the said Police Judge, because there was no charge, which under the law could be preferred against him; * * * that by reason of the said actions of the said Wm. Couch, he suffered great physical pain and was greatly humiliated and mortified," and on account of which he was damaged in the sum of $2,500, for which he prayed recovery.

The defendants Couch and the bonding company each filed separate answers, denying the allegations of plaintiff's petition, and by a separate paragraph pleaded that the acts complained of in the petition, if they occurred, were committed by Couch in self-defense.

To this plea of self-defense, the plaintiff Noger demurred, and, without waiving same, replied, controverting it.

Upon a trial before a jury, a verdict was returned against both the defendants in favor of appellee for the sum of $1,000.

Appellants filed motion and grounds for a new trial, in which seven grounds of error are assigned, although, upon their motion being overruled, only three of these alleged errors so complained of are in their brief argued and insisted upon for a reversal of the judgment. These three grounds are as follows: (1) That the officer was not acting within his official capacity, if there was no justification for the arrest; (2) that the court erred in instructing the jury to allow damages for pain and suffering, when admittedly there was no evidence of physical violence of any kind; and (3)

that the damage awarded is excessive, and appears to have been given under the influence of passion and prejudice.

The evidence is somewhat conflicting as to what happened at the time of the alleged unlawful arrest of plaintiff. It appears that the appellee, Martin Noger, operates a lunch stand in the front part of a pool room in Hazard, Ky., and that on the evening of December 24, 1930, Couch went into this lunchroom to get a sandwich, which was there sold him by Noger's stepson, Orville Johnson. While Couch was eating his lunch, Loren Johnson (also a stepson of Noger), who, it is admitted, was then exceedingly drunk, entered the lunchroom and cursed Officer Couch and undertook to provoke his own arrest by him. Couch soon found it necessary to put the quarrelsome and drunken man under arrest, which was resisted by him. After Couch's calling to his assistance another officer, there followed a general fight in the restaurant between Loren Johnson, Orville Johnson, his brother, and the two officers, in which dishes were thrown and other acts of violence committed.

After the difficulty was over and Johnson's arrest made, Couch was bleeding, and his teeth were knocked loose.

Appellant Couch testified that appellee Noger took part in the affray by both encouraging Loren Johnson to resist arrest and also by striking him in the back of the head while he was endeavoring to arrest Johnson. This Noger denies, and Couch is not substantially corroborated in his accusation of Noger by the other witnesses.

After arresting and placing Loren Johnson in jail, Couch at once returned to the lunchroom, where he, with drawn pistol, arrested Noger and took him to the police court some three blocks away.

Noger states that Couch wrongfully arrested him because angered by his mistaken belief that he had unlawfully assisted Loren Johnson in resisting arrest. Yet he also testifies that no violence accompanied his arrest, and that no physical pain was suffered by him because of it, and he also further testifies that, when he was carried before the police judge, he was at once released, without a charge being placed against him.

The hearing of evidence concluded, the court in substance instructed the jury that, if they believed from the evidence that, at the time Martin Noger was arrested by defendant William Couch, Couch did not have in his possession any warrant for the arrest of Noger, and that Noger had not committed a public offense in the presence of the said Couch, and that the said Couch did not at the time have reasonable grounds to believe that Noger had committed a felony, then they would find for the plaintiff as against both defendants, and, if they found for the plaintiff, they would find for him such a sum in damages as they might believe from the evidence would compensate him for being deprived of his liberty or for any physical pain or humiliation or mortification suffered by him, if any, which they might believe from the evidence was a direct or proximate result of the said arrest and imprisonment, but not exceeding the sum of $2,500 claimed in the petition.

We will now address ourselves to the consideration of the first and chief complaint urged by appellant for a reversal of the judgment, which is that the bond sued on is conditioned only that the officer shall well and faithfully perform all and singular the duties enjoined upon him by reason of his election or appointment, and, since there was no justification for the arrest, as Noger claims, the officer's act in arresting him did not constitute a violation of the bond.

In support of this ground of complaint, the appellant, with much insistence, argues that:

"It is a well settled question in Kentucky that a bond of this nature does not cover a wrongful arrest or damages sustained by any act of the officer, such as wrongful assault or battery, unless the officer was acting in an official capacity, to-wit: unless he is making an arrest by virtue of a warrant or when the person arrested has committed a public offense in his presence or unless the officer had reasonable grounds to believe that the person arrested has committed a felony. In all other cases, the officer is acting outside the scope of his authority as an officer and the surety on his his official bond is not liable for the trespass."

Appellants cite in support of this contention that such is the rule of non-liability of sureties upon official

bonds, a long line of cases decided by this court so holding and applying such common-law rule.

This precise question here presented for our review was likewise raised, argued, and pleaded by the same counsel on behalf of the same appellant bonding company before this court, in the recent case of the Fidelity & Deposit Co. of Maryland v. Sally, 237 Ky. 136, 35 S. W. (2d) 7, 8, where the court, in the course of its opinion, thus answered and disposed of this same contention therein made, after discussing and considering this same line of cases as here again so presented:

"There is a line of cases holding that an officer who, not in the discharge of his official duties, makes an arrest, his surety cannot be held responsible for his unlawful act. These opinions speak for themselves, but they have no application to the case before us because of the provisions of section 3508, Ky. Stats. That is a part of the charter of cities of the fourth class and Hazard belongs to that class. That section requires the execution of a bond by a police officer to the effect that the officer will faithfully discharge all the duties of the office and pay over all sums of money that may come into his hands to the person entitled thereto. Then follows this provision:

" 'And for any unlawful arrest, or unnecessary or cruel treating or assault in making an arrest, they and their sureties shall be liable to the person so injured on said bond.'

"This provision of the statute becomes a part of every bond executed under that section, and the surety on the bond, by the provisions of the statute itself, is made liable for any unlawful arrest, or unnecessary or cruel treating or assault in making an arrest.

"The opinion in the case of Elam v. National Surety Co., 201 Ky. 74, 255 S. W. 1039, clearly points out the distinction between the cases cited and relied on by counsel for appellant and this case. It was there held in construing section 3508, Ky. Stats., that it unquestionably fixes and declares the liability of the surety in the bond of a police officer for the making of a false arrest by the latter. In the case of Rice v. Lavin, 199 Ky. 790, 251 S. W.

990, the distinction mentioned in the case of Elam v. National Surety Co. was also pointed out."

But appellants further contend that the rule announced in the case of Shelton v. National Surety Co., 235 Ky. 778, 32 S. W. (2d) 339, by them cited as applying the rule of non-liability of the surety for the unlawful arrest by a peace officer, alleged made outside the scope of his authority as such, is the right and true rule, while that announced in the Sally Case, supra, is wrong. Reference to the last-named case will, however, show that the rule of non-liability, announced and applied in the Shelton Case, supra, and now urged upon us by appellants as controlling in the instant case, was likewise argued and insisted upon as applicable and controlling in the Sally Case, but the court, declining to adopt such view, in its opinion disposed of this contention in the following language:

"A reading of the opinion discloses that the court did no more than to apply the principles announced in the cases relied on by appellant to the facts in the case then before the court, without taking into consideration the provisions of section 3690, Ky. Stats., which are similar to the provisions found in section 3508. The opinion in that case follows a long line of opinions and is not out of harmony with any of them. The court made no construction of the provisions of section 3690, Ky. Stats., and did not decide the case on the statutory provisions."

Again, in the very recent case of Howard v. Hyden, 239 Ky. 233, 39 S. W. (2d) 265, this same question of liability under the statute here presented was again considered by the court, and the rule as announced in the Sally Case, supra, approved and re-enunciated as follows:

"The right of appellant to recover from the sureties on the bond as chief of police is fixed by section 3508, Ky. Statutes, which is in this language: * * *

"We have construed this statute as giving a right of action against the sureties on a bond executed in pursuance to it in Fidelity & Deposit Co. v. Sally, 237 Ky. 136, 35 S. W. (2d) 7. We held that an action for the wrongful and malicious acts

of an officer was maintainable against the sureties by reason of the statute supra."

Appellants further contend that section 186d-1, Kentucky Statutes, repeals that part of sections 3497 and 3508 of the Statutes which provides:

"And for any unlawful arrest, or unnecessary or cruel beating (treating), or assault in making an arrest, he and his bondsmen shall be liable to the person so injured on said bond."

We deem this contention to be without merit, as we are of the opinion that section 186d-1 of the Kentucky Statutes, providing that official and fiduciary bonds shall be for a certain penal sum, was not intended by the Legislature to relieve a surety on a policeman's bond from the statutory liability provided by sections 3497 and 3508, which are charter provisions of cities of the fourth class, to which class the town of Hazard belongs.

Section 186d-1 of the Statutes was in full force and effect at the time when this court considered the exact question here presented of the liability of a surety upon a policeman's bond, given under and pursuant to sections 3497 and 3508, in the Sally and Howard Cases, supra, when the rule of their liability upon such bonds was therein announced. No contention was in those cases, or in other like cases, before this court, that the provision of section 186d-1, Kentucky Statutes, did so amend or repeal the earlier enacted sections 3497 and 3508 of the Statutes as to modify or change the rule as to the liability of a surety upon a policeman's bond as thereby provided and as in these cases announced.

We conclude, therefore, that this contention of appellant, that section 186d-1 of the Kentucky Statutes should be construed as repealing that part of sections 3497 and 3508 quoted supra is entirely without merit and is not to be sustained.

The instructions, as given by the court, are next complained of by appellant, in that they authorized the jury to allow appellee damages for physical pain suffered by him in his arrest by Couch, when there was no evidence that any acts of physical violence attended appellant Couch's alleged unlawful arrest of Noger nor that he was subjected to or suffered any physical pain at the hands of Couch by reason of or while under-

going such alleged wrongful arrest. In fact, it may be conceded that no physical pain was suffered by appellee, whose own testimony on this subject is as follows:

"Q. Were you hurt in any way in that transaction? A. Nothing but moral pains.

"Q. They did not strike you or hit you in any way? A. No, never gave them a chance, I just went."

It is well settled that instructions given the jury should be based on issues made by the pleadings and supported by the evidence, and also that an instruction is erroneous which authorizes the jury to find damages for an injury to plaintiff, when the evidence fails to disclose such injury, as the rule is that instructions should be confined to the issues made by the parties in their pleadings, that are supported by the evidence, and, unless an issue is so made, no instruction should be given the jury concerning it, however material it may be.

In the case of Keiner v. Collins, 161 Ky. 696, 171 S. W. 399, 401, in considering an objection made to an instruction in allowing damages for physical suffering, the court held it was erroneous in such respect because not supported by the evidence. In that case the court said:

"No. 3, which was as to the measure of damages, improperly authorized the jury, in the event they found for appellant, to allow her, in addition to damages for mental suffering or humiliation, such damages as would compensate her for any physical suffering that she may have endured by reason of her arrest and prosecution. Damages for physical suffering were not recoverable, because the evidence failed to show any physical suffering on the part of appellant."

And again in the case of Illinois Cent. R. Co. v. Dennington, 172 Ky. 325, 189 S. W. 217, 220, the court in the course of its opinion thus again announced this same rule regarding instructions:

"The instruction on the measure of damages authorizes a finding of damages for both mental and physical suffering. It does not appear that plaintiff's arrest was accompanied by unnecessary force, or that, while being detained, he was sub-

jected to any bodily suffering or physical pain. Under the circumstances, therefore, damages for physical suffering were not recoverable, and the instruction on the measure of damages was erroneous.''

Considering the fact that the plaintiff recovered $1,000 as damages under the jury's verdict returned herein under this instruction complained of, because it gave to the jury the right to allow appellee such damages as they might believe from the evidence would compensate him, not only for being deprived of his liberty or for humiliation or mortification suffered by him, but also for physical pain suffered by him by reason of the arrest, the objection appears meritorious, especially as it is admitted that there is no evidence that any physical pain was suffered by appellee because of or accompanying his arrest, and as it is even expressly stated by appellee himself that no physical pain was suffered by him. Under these conditions we are not prepared to say that the jury did not, under the instruction given upon the measure of damages, award damages, as a part of its verdict, to the appellee for his physical pain alleged in his petition to have been suffered. We are supported in this opinion by reason of the fact that the evidence shows that appellee's only discomfiture, or injury, suffered by reason of his arrest, was the deprivation of his liberty and humiliation or mental suffering in being arrested and carried unwillingly away from his restaurant for a distance of some three blocks to the police court, where he was at once dismissed.

The recovery of $1,000 awarded as compensatory damages to the appellee, Noger, for the deprivation of his liberty and for both mental and physical pain alleged suffered by him because of this arrest, even though it was, according to the evidence, unattended with any accompanying acts of violence or physical injury, induces us to conclude that the jury were very probably influenced in their verdict awarding such an amount, by reason of the instruction on the measure of damages as given them, which authorized the jury to award damages to appellee for his alleged physical pain, even though it is admitted there was no evidence of any physical pain suffered by him. We are thus led to conclude that it was probably because of this complained of error in the instructions which induced the

jury to award damages in so substantial an amount, as it tended to show that same was, in fact, based upon and intended to embrace an allowance to appellee of damages for physical pain alleged suffered, even though such an allegation was unsupported by any evidence thereof. Especially does appellant's objection to the instruction, authorizing recovery of damages for physical pain, appear meritorious as being substantially prejudicial to appellant, when it is considered that the award made Noger of $1,000 as compensatory damages should have been confined by the instruction to an allowance only for his deprivation of liberty and humiliation experienced in being arrested and taken some three blocks by appellant to the police court, where he was at once dismissed, as there was no other evidence of injury upon which to instruct. Therefore the jury's award of so considerable a sum as $1,000, here given to appellee as compensation for his so inconsiderable an injury as disclosed by the record, was, when so considered and measured, unwarranted by the evidence and appears excessive. However, we do not deem it needful to here decide this question, having reached the conclusion that the judgment should be reversed upon the ground that the instruction given was prejudicially erroneous. Hence, upon another trial of the case, the evidence being the same, the court will omit from its instruction given the jury upon the measure of damages the authority herein given it to award appellee damages for physical pain suffered by him because of his alleged unlawful arrest.

The judgment is therefore reversed, and cause remanded for a new trial consistent with this opinion.